# U N I T E D   S T A T E S   D I S T R I C T   C O U R T
## D I S T R I C T   O F   N E W   J E R S E Y



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

June 30, 2011

Leo V. Leyva
Cole, Schotz, Meisel, Forman & Leonard, PA
25 Main Street, P.O. Box 800
Hackensack, NJ 07601

Andrew D. Ullrich
11260 Stelton Road
Piscataway, NJ 08854
        (*Attorneys for Plaintiff*)

Andrew J. Soven
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103-7301

Donna Marie Bates
Rany L. DiClemente
Reed Smith LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08543
        (*Attorneys for Defendant*)

    RE:   **Cherry Hill Partners at Village Place, L.L.C. v. Wachovia Bank,
          <u>National Association, et al., Civ. No. 10-4770 (WJM)</u>**

Dear Counsel:

This matter comes before the Court on the motion for judgment on the pleadings filed by Defendant Wells Fargo & Co., successor by merger to Wachovia Bank, National Association (collectively, "Wells Fargo" or "Defendant"), and the cross-motion for leave to amend the Complaint filed by Plaintiff Cherry Hill Partners at Village Place, L.L.C. ("Cherry Hill").  There was no oral argument. Fed. R. Civ. P. 78.  For the reasons stated below, Defendant's motion for judgment on the pleadings is **DENIED** and Plaintiff's motion to amend the Complaint is **GRANTED**.

## I.   BACKGROUND[1]

Plaintiff is the owner in fee simple of a block of land in Cherry Hill, New Jersey (the "Property").  (Proposed Am. Compl. ¶ 6.)  The Property is being used for a large residential apartment development project (the "Project").  (*Id.*)  Joseph Marino and Jack Morris, principals of Plaintiff, have worked with Wachovia (now Wells Fargo) and its commercial lending department in the past.  (Proposed Am. Compl. ¶¶ 1, 9.)  On May 4, 2007, Plaintiff obtained a $16,100,000.00 loan from Wells Fargo (the "Loan").  (Proposed Am. Compl. ¶ 11.)  Plaintiff also executed a Promissory Note (the "Note") and Loan Agreement for the Loan.  (DiClemente Cert., Docket Entry No. 9-2, Exs. B, C.)  Plaintiff's Loan obligations are secured by a Mortgage and Security Agreement and Financing Statement, also dated May 4, 2007.  (Proposed Am. Compl. ¶ 13.)  The terms of the Loan require Plaintiff to pay interest on a monthly basis, with the principal amount due on an agreed upon maturity date.  (Proposed Am. Compl. ¶ 13.)  The Note further provides that "[n]o waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank."  (DiClemente Cert., Ex. C, at 4.)

The Loan matured on May 15, 2009, and as a result of Plaintiff's failure to pay the full amount, Plaintiff is in default.  (Proposed Am. Compl. ¶ 29.)  However, Plaintiff claims that when the Loan was executed, Plaintiff was told that the Loan would be replaced with a construction loan for Plaintiff's development of a residential apartment complex on the Property.  (Proposed Am. Compl. ¶¶ 14-15.)  Specifically, Plaintiff

---

[1] Plaintiff has filed a proposed amended complaint with its cross-motion for leave to amend the complaint.  (Kim Cert., Ex. A, Docket Entry No. 16-2.)  Defendant's opposition to Plaintiff's cross-motion for leave to amend is premised on the proposed amendments being futile.  (Def.'s Reply and Opp. Br. at 1.)  As such, Court will base its analysis on the facts as alleged in Plaintiff's proposed amended complaint in order to simultaneously determine whether Defendant is entitled to judgment on the pleadings and whether Plaintiff's proposed amendments would be futile.

alleges that in the Spring and Summer of 2008, Plaintiff's principals had numerous discussions with Wachovia's senior commercial loan officer, Alex Fatenko, that confirmed Wachovia's agreement to provide a construction loan for the first phase of the Project. (Proposed Am. Compl. ¶¶ 16-17.)  Plaintiff claims that the terms of this agreement included that Wachovia would continue to extend the existing Loan until the parties closed the construction loan transaction, that the amount would be approximately 70% of the value of the Project (or approximately $39-$42 million), and that the existing Loan would be consumed by the construction financing. (Proposed Am. Compl. ¶ 18.) Finally, Mr. Fatenko allegedly sent an email on September 23, 2008, confirming this agreement. (Proposed Am. Compl. ¶ 20.)  Based on Mr. Fatenko's representations to Plaintiff, and based on Joseph Marino and Jack Morris's past dealings with Wachovia, Plaintiff relied on the forthcoming construction loan in continuing to move forward with the Project. (Proposed Am. Compl. ¶ 22-23.)  However, in early 2009 Mr. Fatenko's team was replaced by a new team without a prior banking relationship with Plaintiff and its principals. (Proposed Am. Compl. ¶ 26.)  In August 2010, Wells Fargo advised Plaintiff that it would not proceed with construction financing. (Proposed Am. Compl. ¶ 28.)  As such, Plaintiff filed the instant Complaint, alleging that Wells Fargo breached its agreement to provide a construction loan by refusing to provide said construction financing. (Proposed Am. Compl. ¶ 1.)

## II.   DISCUSSION

Plaintiff's proposed amended complaint asserts the following causes of action: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) equitable estoppel; (4) specific performance; and (5) promissory estoppel.  As stated above, since the only reason raised by Defendant to deny Plaintiff's motion for leave to amend the complaint is for futility, the discussion below will address the Plaintiff's allegations as stated in the Proposed Amended Complaint.

### A.   Motion for Judgment on the Pleadings Standard

Under Federal Rule of Civil Procedure 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 12(c); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion to dismiss under Rule 12(b)(6). *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  Under Rule 12(b)(6), the moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate

only if, accepting all of the facts alleged in the complaint as true,[2] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see Twombly*, 550 U.S. at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Furthermore, the Plaintiff must "provide the 'grounds' of his 'entitlement to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

As when considering a motion to dismiss, a court considering a Rule 12(c) motion may rely on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

B.   **Count One – Breach of Contract**

Plaintiff's breach of contract claim arises out of Wells Fargo's failure to provide Plaintiff with the construction loan that it had agreed to provide pursuant to the terms that Mr. Fatenko and Mr. Marino had discussed in August 2008. (Proposed Am. Compl. ¶¶ 41-42.) Plaintiff further argues that Wells Fargo also breached this August 2008 agreement by declaring default on the original Loan, when it had been agreed that the original Loan would be extended until the closing of the construction loan transaction. (Proposed Am. Compl. ¶ 42.) Defendant, however, argues that there was no written agreement to provide construction financing, and that the clear and unambiguous terms of the original Loan defeat Plaintiff's claim. Defendant further claims that even accepting Plaintiff's claim of an oral agreement as true, the alleged agreement described by Plaintiffs is still barred by the statute of frauds and parole evidence rule.

---

[2] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

First, Defendant is correct that the clear and unambiguous terms of the Loan Agreement do not refer to any subsequent construction loan. However, Plaintiff does not claim otherwise. Instead, Plaintiff's allegation is that a separate, oral contract existed between the parties to extend the Loan and for issuance of construction financing. (Proposed Am. Compl. ¶ 9.) As such, the core issue as to whether Plaintiff has stated a breach of contract claim is whether or not the construction loan agreement as alleged is valid and enforceable.

### 1.   Elements of a Valid Agreement

In order to plead a valid oral contract, Plaintiff must plead: (1) mutual assent of the parties; (2) consideration, and (3) capacity of the parties to enter into the agreement. First, Plaintiff points to an email between Alex Fatenko from Wells Fargo and Joseph Marino from Cherry Hill in August 2008 that represents the mutual assent of the parties. (Proposed Amended Compl. ¶ 17-18.) The Proposed Amended Complaint also lists the alleged terms of this agreement, including interest payment terms that can be considered Cherry Hill's consideration for the construction loan. (Proposed Amended Compl. ¶ 18.) Finally, both parties had the capacity to enter into the agreement. As such, at least in the Proposed Amended Complaint, Plaintiff has pleaded the requisite elements for an oral agreement. However, whether or not the oral agreement as alleged is enforceable as a matter of law is a separate issue addressed below.

### 2.   Statute of Frauds

In New Jersey, the statute of frauds requires an agreement to lend a sum of money greater than $100,000 to be in writing. N.J. Stat. Ann. 25:1-5. Both parties agree that (1) the statute of frauds applies to the oral agreement at issue here, but that (2) the agreement will be removed from the statute of frauds if Plaintiff can show either promissory estoppel or partial performance.

In order to plead promissory estoppel, Plaintiff must show: "(1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) incurred a detriment in said reliance." *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 619 (D.N.J. 2001) (citing *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 165, 679 A.2d 745 (App. Div. 1996)). However, as the New Jersey Appellate Division has cautioned, "[t]oo liberal an application of [promissory estoppel] will result in an unwitting and unintended undermining of the traditional rule requiring consideration for a contract." *Malaker Corp. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 480 (App. Div. 1978).

5

To satisfy the first element and show that a promise was made, Plaintiff points to meetings and an email between Mr. Fatenko and Mr. Marino, where the essential terms of the forthcoming construction loan were agreed upon. (Proposed Am. Compl. ¶¶ 16-20.) Defendant argues, however, that Plaintiff fails to point to a "clear and definite" promise because the amount of the alleged loan agreement is not certain. *See Malaker*, 163 N.J. Super. at 480 (finding that the "clear and definite promise" element was not satisfied where no "specific amount" was promised). Plaintiff only claims that Defendant would lend "approximately 70% of the stabilized value of the Project," which Mr. Fatenko advised in August 2008 would be "approximately $39-$42 million for the first phase of the Project." (Proposed Am. Compl. ¶¶ 18, 25.) Defendant argues that since "[i]ndefinite promises or promises subject to change by promisor" do not constitute "clear and definite" promises, the promise alleged by Plaintiff is likewise not "clear and definite" since the exact amount had yet to be decided. *See Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002). However, the promise addressed in *Del Sontro* was one where the promisor expressly stated that it was "totally voluntary" and that the promisor "reserves the right to alter the terms...or rescind it." *Id.* at 575. Similarly, the promise alleged in *Malaker* was that if "additional funds" were needed, "additional collateral" would be necessary. *Malaker*, 163 N.J. Super. at 480. For both these cases, the promises were considered "indefinite" because the promisors did not fully commit to providing financing, not just because the amount was not finalized. Here, Plaintiff is alleging a "clear and definite" promise to provide a construction loan for an amount that cannot be calculated without a full valuation analysis of the Project. Simply because Defendant may not have completed the requisite calculations before rescinding its promise does not mean that promise was not "clear and definite." As such, at least at this stage, Plaintiff has satisfied the first element of a promissory estoppel claim by pleading a clear and definite promise.

As to the second requirement, Plaintiff claims Defendant expected Plaintiff to rely upon the construction financing promise, and that Defendant moved forward as if a construction loan was in the works. For example, Plaintiff claims that Mr. Fatenko requested financial information specifically related to the construction financing, in order to perform the valuation necessary to determine the exact amount of the construction loan. (Proposed Am. Compl. ¶ 24.) Plaintiff's allegations indicate that Plaintiff's dealings with Mr. Fatenko implied that the construction financing was a finalized deal that Plaintiff could rely upon. (Proposed Am. Compl. ¶¶ 19-25.) These factual allegations are sufficient to support the second element, that the promise was made with the expectation that the promisee would rely upon it.

Finally, to plead reasonable detrimental reliance on Defendant's alleged promises, Plaintiff points to the following detrimental acts: (1) its continued monthly interest and

6

quarterly tax payments in connection with the original Loan on a timely basis, beyond the maturity date; (2) its continuation of substantial improvements with respect to the Property; and (3) arrangement by its principals for their affiliated companies to pay down principal and interest on other unrelated loans totaling over $50 million.  (Pl.'s Opp. Br. at 20.)  Plaintiff further argues that this reliance on the promise was reasonable based on Mr. Marino and Mr. Morris's longstanding relationship with Wachovia.  (Proposed Am. Compl. ¶¶ 1, 9, 22.)  Defendant argues that the continued payments on the original Loan and the continued improvements to the Property could not constitute detrimental reliance on the construction loan since these actions are covered by the original loan.  However, the Court finds that Plaintiff has properly pleaded detrimental reliance in that Plaintiff alleges that it "would not have continued to fund [the] substantial improvements to the Property, which cost approximately $5 million and were funded from its own pocket, but for the parties' agreement[.]" (Pl.'s Reply Br. at 7.)  This allegation, that Plaintiff moved forward in preparing for the Project based on the guarantee it received from Defendant that a construction loan would be forthcoming, is sufficient to state a claim of detrimental reliance.  Finally, Plaintiff has made a case for the reasonableness of this reliance, based on Mr. Marino and Mr. Morris's past dealings with Wachovia, and the other similar construction loans that they had obtained in those past dealings.  As such, at this time the Court finds Plaintiff has stated a promissory estoppel claim, which overcomes the statute of frauds.[3]

### 3.    Parol Evidence Rule

Defendant additionally argues that the parol evidence rule applies, as well as a clause in the Note for the original Loan prohibiting oral modifications to the loan, and that for both reasons any alleged oral agreement is invalid.  Plaintiff, in response, argues that the oral agreement is a separate, "new agreement," and not a modification of the Loan.

The parol evidence rule generally "precludes the introduction of oral promises to alter or vary the terms of an integrated written agreement."  *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 436 (D.N.J. 1998).  More specifically, "[w]here the contract or agreement is unambiguous, parol evidence of prior inconsistent terms or negotiations is inadmissible to demonstrate intent of the parties."  *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994).  The purpose of the parol evidence rule is to prevent parties from changing the clear meaning of a written agreement by providing evidence that the parties actually meant something else.  Here, Plaintiff is not seeking to modify or vary the

---

[3] Because the statute of frauds no longer applies based on Plaintiff's showing of a *prima facie* case of promissory estoppel, the Court does not need to address Plaintiff's further claim of partial performance at this time.

7

terms of the original Loan documents based on a prior or contemporaneous oral agreement; instead, Plaintiff is seeking to introduce evidence that a separate, second agreement was made after the original Loan.  (*See* Pl.'s Opp. Br. at 23-24.)  The parol evidence rule does not apply to a separate oral agreement between two parties that is reached after the execution of a written agreement.  *See Telmark Packaging Corp. v. Nutro Labs. & Nature's Bounty*, Civ. No. 05-3049, 2008 U.S. Dist. LEXIS 45, at *12 n.5 (D.N.J. Jan. 2, 2008) (pointing out that the parol evidence rule does not apply where "[the] claim does not involve the interpretation of any clause in the [a]greement, but rather alleges oral promises made apart from the [a]greement"); *Lewis v. Travelers Ins. Co.*, 51 N.J. 244, 253, 239 A.2d 4 (1968) ("[T]he parol evidence rule d[oes] not bar proof of changes subsequent to the execution of the integrated writing.").  Since Plaintiff is not attempting to use parol evidence to reinterpret any clauses in the original Loan, the parol evidence rule does not apply here.  As such, Plaintiff's breach of contract claim in Count One remains.

## C.   Count Two – Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Defendant breached its duty of good faith and fair dealing by "acting in bad faith and in a malicious manner," and by continuing to "deal unfairly and dishonestly with Plaintiff with regard to various affirmative representations and promises the Bank has made to Plaintiff."  (Proposed Am. Compl. ¶¶ 46-47.)  New Jersey law provides that every enforceable agreement contains a covenant of good faith and fair dealing.  *Fields v. Thompson Printing Co.*, 363 F.3d 259, 271 (3d Cir. 2004).  Defendant claims that without an enforceable contract, no such implied covenant attaches.  *See Kapossy v. McGraw-Hill, Inc.*, 921 F. Supp. 234, 248 (D.N.J. 1996).  However, since Plaintiff has properly alleged the presence of an enforceable agreement, Plaintiff has also properly alleged that the covenant of good faith and fair dealing attaches here.

The implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Black Horse Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575 (1997)).  However, "[t]he implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995) (citing *Glenfed Fin. Corp. v. Penick Corp.*, 276 N.J. Super. 163, 647 A.2d 852, 858 (App. Div. 1994)).  Essentially, the purpose of the implied covenant of good faith and fair dealing is to "fill in the gaps where necessary to give efficacy to the contract as written."  *Fields*,

363 F.3d at 271 -272.

At this stage, Plaintiff has properly stated a breach of implied covenant of good faith and fair dealing claim.  Plaintiff alleges that a valid and enforceable agreement existed between Plaintiff and Defendant.  If Plaintiff is able to prove that a valid contract existed, but is not able to prove that Defendant breached any express terms of that contract, Plaintiff may be able to show in the alternative that there was a breach of the implied covenant of good faith and fair dealing.  As such, Defendant's motion for judgment on the pleadings is denied as to Count Two.

### D.    <u>Counts Three and Five – Estoppel</u>

In Count Three, Plaintiff alleges that "[u]nder principles of equitable estoppel, Defendant[] should be precluded from disavowing [its] agreement," because Defendant was aware that Plaintiff was relying, to its detriment, on Defendant's representations and promises that construction financing would be provided.  (Proposed Am. Compl. ¶ 54.) In Count Five, Plaintiff alleges that it suffered damages when it detrimentally relied on Defendant's "clear and definite promised to provide a construction loan to Plaintiff." (Proposed Am. Compl. ¶¶ 59-62.)

Count Five has already been addressed in the Court's analysis of Count One, above.  For the same reasons as addressed under Count One, Defendant's motion for judgment on the pleadings is denied as to Count Five.  As for Count Three, the elements of equitable estoppel include "a knowing and intentional misrepresentation," which would "probably induce reliance," and "[actual] reliance by the party seeking estoppel to his or her detriment."  *O'Malley v. Dep't of Energy*, 537 A.2d 647, 651 (N.J. 1987). Equitable estoppel "is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment."  *Knorr v. Smeal*, 178 N.J. 169, 178 (N.J. 2003).  As with a promissory estoppel claim, detrimental reliance by the party invoking the doctrine is a key element.  *See Barone v. Leukemia Soc. of Am.*, 42 F. Supp. 2d 452, 464 (D.N.J. 1998) (party claiming equitable estoppel must show substantial detrimental reliance); *Palatine I v. Planning Bd.*, 133 N.J. 546, 563, 628 A.2d 321 (1993) ("only *justified* and *reasonable* reliance warrants the application of equitable estoppel" (emphasis in original)).  As discussed in the analysis of Plaintiff's promissory estoppel claim, Plaintiff has stated detrimental reliance here.  Additionally, Plaintiff may be able to prove that Defendant made a "knowing and intentional misrepresentation," if further evidence supports the allegations that Defendant intentionally misrepresented to Plaintiff that a construction loan would be provided.  Hence, Counts Three and Five both properly state claims upon which relief can be granted, and therefore both remain.

9

### E.    Count Four – Specific Performance

In Count Four, Plaintiff requests specific performance of the alleged construction loan by Wells Fargo.  Specific performance is an equitable remedy and not an independent cause of action.  *Cotter v. Newark Housing Authority*, Civ. No. 09-2347, 2010 WL 1049930, at *4 (D.N.J. Mar. 17, 2010).  Therefore, to state a claim for specific performance, Plaintiff must also have alleged a valid and enforceable contract.  *Marioni v. 94 Broadway, Inc.*, 274 N.J. Super. 588, 598-99 (App. Div. 2005), *cert. denied*, 183 N.J. 591 (2005).  Since the Court finds Plaintiff has alleged a valid agreement, this is not an issue.  The only issue is whether or not specific performance may be an appropriate remedy.

Under New Jersey law, the "right to the equitable remedy of specific performance turns upon the existence of an adequate remedy at law; and the adequacy of the legal remedy of compensation depends upon the facts and circumstances of the particular case."  *Fleischer v. James Drug Stores, Inc.*, 1 N.J. 138, 146, 62 A.2d 383, 387 (1948).  As to construction loans specifically, courts have recognized that "specific performance may be justified in exceptional circumstances."  *First Nat'l State Bank of New Jersey v. Commonwealth Federal Sav. & Loan Ass'n*, 610 F.2d 164, 172 (3d Cir. 1979).  Where a plaintiff succeeds on the merits, and it looks to the court that the plaintiff will be unable to get alternative financing for its construction project, courts have granted the equitable relief of specific performance.  *See First Nat'l State Bank*, 610 F.2d at 173 (complexity of valuation appraisals and the riskiness of real estate ventures make specific performance an appropriate remedy in some construction loan cases); *Selective Builders, Inc. v. Hudson City Sav. Bank*, 137 N.J. Super. 500, 508 (Ch. Div. 1975) (finding damages inadequate and compelling specific performance of a commercial mortgage loan commitment).  Since specific performance may be an appropriate remedy here, Defendant's motion is denied as to Count Four.

### F.    Plaintiff's Motion for Leave to Amend the Complaint

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  While the decision to grant leave to amend rests within the discretion of the court, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Third Circuit has specifically recognized that undue delay, bad faith, dilatory motive, prejudice, and futility are all grounds that could justify a denial of leave to amend.  *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1434 (3d Cir. 1997).  In opposition to Plaintiff's motion for leave to amend the Complaint, Defendant argues only that the amendments proposed by Plaintiff are futile and do not survive Defendant's motion for judgment on the pleadings.  In assessing the "futility" of any additional amendment, courts apply the same standard as under Rule 12(b)(6).  *Id.* at 1434.  Since the Court has already determined that Plaintiff's proposed amended complaint succeeds in stating a claim upon which relief can be granted, the proposed amendments are not futile.  As such, Plaintiff's motion for leave to amend is granted.

## III.  CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for leave to amend the complaint is granted.  An Order accompanies this Letter Opinion.

 s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

11